## EICHMAN v. OKLAHOMA CITY.

No. 10093—Opinion Filed Nov. 22, 1921.

(Syllabus.)

### Eminent Domain—Condemnation of Land for City Reservoir—Elements of Value —Instructions.

In the trial of a cause seeking to condemn certain lands for reservoir purposes by a municipality, an instruction to the jury as follows: "You are instructed that the owner of the property sought to be condemned for public purposes is not permitted to take advantage of the necessities of the condemning party, and in this connection you are instructed that the necessity for the use of the lands of the defendant for reservoir purposes, by the plaintiff in this case, the city of Oklahoma City, cannot be considered by you in arriving at your verdict in this case. * * * And in this connection you are instructed that unless you find and believe from the evidence that there existed on the market a demand for reservoir sites similar to the one in question, by public or private corporations other than the plaintiff in this case, or by individuals, and that there was a reasonable probability that the lands comprising the reservoir site, including the lands of the defendant, could be united by agreement or purchase in such a way as to be available for such purpose, then you are instructed that you should not allow the defendant any compensation for his land as comprising a part of the reservoir, in addition to the fair market value of his land for other purposes" —is not error.

Error from District Court, Canadian County; Edward D. Oldfield, Judge.

Proceedings by Oklahoma City to condemn land of Joseph Eichman for city reservoir purposes. From judgment upon appeal from award of commissioners, Eichman brings error. Affirmed.

Grant Stanley and C. V. Crabb, for plaintiff in error.

Charles H. Ruth and O. L. Price, for defendant in error.

PITCHFORD, V. C. J. This is a proceeding under the "Eminent Domain Law," as found in chapter 30, Rev. Laws of Oklahoma, 1910, brought by Oklahoma City, Oklahoma, against Joseph Eichman, to con-

demn for reservoir purposes lots 4, 5, and 6, sec. 24, twp. 12 north, range 5 west, Indian Meridian, in Canadian county, Oklahoma, containing 90.6 acres of land. The commissioners appointed to appraise the land found the value to be $5,000. From this award, Eichman demanded a jury trial, and the jury after hearing the evidence found the value to be $4,711.20. Judgment was rendered in accordance with the verdict, from which an appeal to this court has been prosecuted by Mr. Eichman. Hereinafter Oklahoma City will be denominated plaintiff, and Joseph Eichman will be denominated defendant.

The errors assigned for reversal are covered and controlled by instructions of the court. If these instructions are correct, then the judgment of the trial court should be affirmed, otherwise it should be reversed. The portions of the instructions complained of are as follows:

"You are instructed that the owner of the property sought to be condemned for public purposes is not permitted to take advantage of the necessities of the condemning party, and in this connection you are instructed that the necessity for the use of the lands of the defendant for reservoir purposes, by the plaintiff in this case, the city of Oklahoma City, cannot be considered by you in arriving at your verdict in this case. * * * And in this connection you are instructed that unless you find and believe from the evidence that there existed on the market a demand for reservoir sites similar to the one in question, by public or private corporations other than the plaintiff in this case, or by individuals, and that there was a reasonable probability that the lands comprising the reservoir site, including the lands of the defendant, could be united by agreement or purchase in such a way as to be available for such purpose, then you are instructed that you should not allow the defendant any compensation for his land as comprising a part of the reservoir, in addition to the fair market value of his land for other purposes."

The right of "eminent domain" has well been defined as an attribute of sovereignty of the state, and is exercised for a variety of purposes, some of which are for governmental uses, either of the state at large or of local municipality bodies, or by private persons or corporations authorized to exercise some function of a public character technically known as public use. It is the right retained by the people, or government, over the real estate of individuals to reclaim the same for public good; but in no case should the right be exercised without making just compensation to the owner of

the property. The compensation in every instance should be the equivalent in value of the property; the main object for requiring this compensation being that the owner of the property taken shall not be required to bear any other than his just proportionate part of whatever is considered necessary for the public good. The actual market value at the time the property is taken must be allowed; that is, the fair value of the property as between one who wants to sell and one who wants to purchase, not how much the owner could obtain for it from the power seeking to condemn by reason of the necessities of the latter.

The rule is laid down in Blincoe v. Choctaw, O. & W. R. Co., 16 Okla. 286, 83 Pac. 903, as follows:

"The law does not permit you to fix speculative, boom, or fancy values upon the property in controversy, but the law requires you to determine the reasonable market, salable value of the property if the owner was offering to sell on the usual terms and the purchaser desired to buy."

In Baltimore & O. R. Co. v. Bonafield's Heirs et al. (Va.) 90 S. E. 868, the rule is stated as follows:

"The true test of the market value of land taken for a public use is the price for which it could have been sold by a person desirous of selling to a person wishing to buy, neither acting under compulsion, and both exercising intelligent judgment."

The general proposition is laid down in San Diego Land & Town Co. v. Neale et al. (Cal.) 25 Pac. 977, as follows:

"On condemnation of land for public use, the present market value, and not the value to the owner or to the person seeking to condemn it, is the basis of compensation.

"In condemnation of land for reservoir purposes, estimates of value based on the cost of the proposed waterworks, the increase of population, extension of the water system, and the probable income and profit from the works are not admissible."

The rule is stated in 15 Cyc. 685, as follows:

"The measure of damages when the whole of any particular piece of property is taken for a public use under the power of eminent domain is the market value of it. Market value means the fair value as between one who wants to purchase and one who wants to sell, not what could be obtained for it under peculiar circumstances when a greater than its fair price could be obtained, nor its speculative value, nor a value ob-

tained from the necessity of another; its present value at a sale which a prudent owner would make if he had the power of election as to the time and terms; its value in view of all the purposes to which it is adapted; the amount for which it would actually sell at the time, not what it might bring or ought to bring. at some future time; such a sum as it is fairly worth in the market, not its value at a forced sale; not merely the value to the owner or to the person seeking to condemn it. Its fair market value is to be reached without any regard to the external causes which may have contributed to make up its value at the time of the assessment."

The evidence in the instant case discloses that the growth of Oklahoma City made it imperative that the water supply be increased, and with this fact in view the lands adjacent to the city were inspected. A feasible location was finally decided upon. The lands necessary for this purpose comprised between 2,500 and 3,000 acres, owned by numerous parties. The land of the defendant within and by itself possessed no intrinsic value for a reservoir and was suitable for such a purpose only in connection with the remaining lands comprising the site. The contention of the defendant is found in instruction No. 2, refused by the court, which is as follows:

"If you find from the evidence that the lands of the defendant herein, which are sought to be condemned, were a portion of a body of lands peculiarly valuable for water reservoir purposes prior to the time the same was taken in this proceeding by Oklahoma City, which if brought under the control of a single owner would constitute a valuable property right. the city must make compensation for the value of the same to each owner thereof in proportion to the part thereof owned by separate owners."

The defendant claims that the court committed error in not giving this instruction. In our opinion the instruction was properly refused. In City of New York v. William Sage, Jr., 239 U. S. 57, 60 L. Ed. 143, it is said:

"Compensation to the owner of one of many parcels of land taken by eminent domain for a site for a reservoir for a municipal water supply should not include any part of an increase in value for that purpose due to its union with other parcels if such union would not have been practicable, or have been attempted, except by the intervention of eminent domain."

With respect to the property taken, the award was based upon its actual market value at the time of its condemnation. There is no contention that the property taken within itself possessed any value for reservoir purposes. The land of the defendant, however, was no doubt of some value to the city for this purpose, taken in connection with the other property secured, but it was not shown that the land of the defendant had ever been considered within itself suitable for such purposes, and under the authorities cited it is not what the land was worth to Oklahoma City, but what was the market value of the same. There is no evidence of any prior demand for the property as a reservoir site or of any customer who would be willing to pay more for it for that purpose, or of any circumstance by which its value as a part of a natural reservoir site could be estimated or determined. In fact, there is no evidence tending, in the least, to show that there was any reasonable probability that the lands comprising the reservoir site, including the lands of the defendant, could or would be united by agreement or purchase in such a way as to be available for a reservoir; nothing to indicate that any other city except Oklahoma City could utilize the lands taken for the purpose for which they were taken.

We have not been referred to any decision of this state in which the opposite view has been taken. So far as we have been able to ascertain by an independent investigation, this question has never been decided by this court, and we therefore feel at liberty to adopt the rule which, in our judgment, seems to be more in keeping with the better reason and more fully supported by authority. We have carefully considered the authorities presented by the defendant, and. while we do not find fault with the conclusions therein reached, we are constrained to say that the facts in those cases are not similar to the facts in the case at bar. In all of those cases where the rule seems to be different from the rule herein announced, we find that the property condemned or taken was within itself suitable for the purposes for which it was taken and for that reason possessed an intrinsic value. The rule announced in those cases is that the owner is entitled to the market value of his land to be determined in view of the facts which would naturally affect its value in the minds of purchasers generally. and that the land sought to be condemned, by reason of its situation. because it was a part of a basin adapted for reservoir purposes. would be regarded as more valuable by purchasers generally than if it did not possess such a location. But this qualification is found in the cases cited by the defendant; That the rule contended for would not justify the

admission of mere speculative opinions based upon the necessity of the plaintiff or what the plaintiff could afford to give for the land rather than to do without it.

We are of the opinion that the judgment of the trial court should be affirmed. and it is so ordered.

HARRISON, C. J., and McNEILL, ELTING, and KENNAMER, JJ., concur.